MAHDAVI v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MAHDAVI v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MAHDAVI v. STATE
2020 OK CR 12
Case Number: F-2018-298
Decided: 11/12/2020
JAMES MAHDAVI, Appellant v. THE STATE OF OKLAHOMA, Appellee.

Cite as: 2020 OK CR 12, __ __

 

O P I N I O N
HUDSON, JUDGE:
¶1 James Mahdavi, hereinafter "Appellant", was tried and convicted at a jury trial in Tulsa County District Court, Case No. CF-2016-6320, of two counts of Murder in the First Degree, in violation of 21 O.S.Supp.2012, § 701.7(A). The jury recommended sentences of life imprisonment without the possibility of parole for both counts. The Honorable William J. Musseman, Jr., District Judge, presided at trial and sentenced Appellant in accordance with the jury's verdicts. Judge Musseman ordered the sentences to run consecutively. Appellant now appeals.
¶2 The State's evidence in this case showed that sometime around 9:30 p.m. on November 18, 2016, Appellant shot two men at the Holiday Express Motel located at 3220 West Charles Page Boulevard in Tulsa. Surveillance video shows Appellant walked up to the first victim, Rodney McGee, in the motel parking lot and shot him in the head. The video shows Appellant fired off a single gunshot, killing McGee. The video next shows that Appellant walked around the corner of the motel building and shot through the window of Room 102.
¶3 With this gunshot, Appellant killed Leroy Coleman, the motel's maintenance man. Leroy lived in Room 102 with his wife, Chanel. The couple heard the first gunshot. According to Chanel, her husband was sitting on the edge of the bed inside Room 102, in front of the window, when he pulled back the curtains to look outside and investigate. It was at that moment Leroy was shot in the neck. Leroy initially survived the shooting but died two days later.
¶4 The evidence showed Appellant got into an argument with McGee and Garland Funkhouser, Appellant's uncle, in Room 103 earlier that evening at the motel. This argument occurred while a group of people sat around Room 103 drinking and using drugs. Appellant was asked to leave by Rodney Brummett, the man who lived in the motel room, because of the argument. Appellant complied. Later, Levi Dunkin opened the front door to Room 103 and witnessed Appellant shooting into Room 102 when he killed Coleman. Dunkin testified at trial that Appellant looked at him when he opened the door; that he was able to see Appellant face-to-face and that he was approximately two or three feet away when he saw Appellant open fire on Room 102. Dunkin further testified Appellant used a .22 pistol to shoot into Room 102. The surveillance video corroborates Dunkin's account. So too did Funkhouser who was inside Room 103 and heard a "pop" outside. Funkhouser described for the jury how Dunkin looked outside the front door of Room 103 and shouted immediately after the shooting that "Jay did it." The record shows "Jay" is the nickname used by Appellant.
¶5 Additional facts will be presented below as necessary.
ANALYSIS
¶6 Propositions I and II. Appellant challenges the identification testimony at trial of Levi Dunkin, Rodney Brummett and Garland Funkhouser. Appellant claims their respective identifications of Appellant at trial were unreliable because the pretrial identification procedures used by police were unnecessarily suggestive and violated his right to due process. Appellant applies the constitutional test for reliability for eyewitness identifications to all three witnesses' testimony in support of his claim.
[1] 
¶7 Appellant made no contemporaneous objection on this ground to any of the challenged testimony. Our review is thus limited to plain error. Hammick v. State, 2019 OK CR 21, ¶ 8, 449 P.3d 1272, 1275; Postelle v. State, 2011 OK CR 30, ¶ 26, 267 P.3d 114, 130. To show plain error, Appellant must show an actual error, which is plain or obvious, affected his substantial rights. This Court will only correct plain error if the error seriously affected the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Lamar v. State, 2018 OK CR 8, ¶ 40, 419 P.3d 283, 294; 20 O.S.2011, § 3001.1. 

¶8 Appellant fails to show actual or obvious error. Dunkin was an eyewitness to the shooting. When questioned by detectives, Dunkin initially denied knowing who the shooter was because he didn't want to get involved in the police investigation and said the shooter was an Indian male. Dunkin eventually identified "Jay" as the shooter. Dunkin was shown a six-man photo lineup by investigators and selected Appellant's photo as the one depicting the shooter. At trial, Dunkin unequivocally identified Appellant as the man he observed at the motel shooting into the window of Room 102. Dunkin testified he was two or three feet away from Appellant when it happened, that he saw Appellant's face and instantly recognized him. Dunkin also identified for the jury both himself and Appellant on the motel surveillance video as the shootings unfolded during the playing of the video.
¶9 State and federal evidence rules and statutes typically govern the admissibility of evidence in criminal trials in the United States. Perry v. New Hampshire, 565 U.S. 228, 237 (2012). The trier of fact--in this case a jury--is responsible for determining the reliability of evidence presented at trial. Id. The Due Process Clause, however, provides an additional overlay of protection concerning eyewitness identification testimony. The basic due process standard of fundamental fairness embodied within the Fourteenth Amendment underlies this inquiry. E.g., Perry, 565 U.S. at 245; Manson v. Brathwaite, 432 U.S. 98, 113 (1977).
¶10 Convictions based on "'eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" Postelle, 2011 OK CR 30, ¶ 28, 267 P.3d at 130 (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). If the procedure is found to be unnecessarily suggestive, we determine based on the totality of the circumstances whether the "improper police conduct created a 'substantial likelihood of misidentification.'" Perry, 565 U.S. at 239 (quoting Neil v. Biggers, 409 U.S. 188, 201 (1972)). "[R]eliability is the linchpin in determining the admissibility of identification testimony[.]" Brathwaite, 432 U.S. at 114. The factors we consider in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Brathwaite, 432 U.S. at 114; Biggers, 409 U.S. at 199-200.
¶11 Appellant contends the six-man photo lineup presented to Dunkin was impermissibly suggestive. The record does not support his claim. The six-man photo lineup presented to Dunkin was introduced into evidence as State's Exhibit 34. This lineup included color photographs of Appellant and five other similar men. See Brathwaite, 432 U.S. at 117 (discussing the model photographic array as containing "so far as practicable . . . a reasonable number of persons similar to any person then suspected whose likeness is included in the array.") (internal quotation omitted). Dunkin testified that he selected and initialed the number three photograph in the lineup as the shooter. The number three photograph in the lineup contained Appellant's photo.
¶12 We have held that "although participants in pretrial photo displays should possess the same general physical characteristics as the accused, . . . substantial compliance with physical similarity guidelines will suffice." Webb v. State, 1987 OK CR 253, ¶ 7, 746 P.2d 203, 205 (internal quotation omitted). We have reviewed State's Exhibit 34 and find the photographic lineup presented to Dunkin was not impermissibly suggestive. The participants were substantially similar in their physical characteristics. All six photographs were of white males featuring close-up shots of their head and shoulders against a blue or grey background. The general build, height and weight of these men were mostly indeterminable but their facial structure, hair and ages appear reasonably similar. All six men have similar hair styles with similar hair length and only slight variations in hair color. All six men too have visibly high foreheads. Only one of the men has facial hair which consisted of light facial stubble.
¶13 Two of the men in the lineup had some greying hair. "However, neither this circumstance nor any other circumstances surrounding the photographic display[ ] made the lineup[ ] so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." Webb, 1987 OK CR 253, ¶ 9, 746 P.2d at 206. We observe too there is no evidence in the record the detectives suggested which if any of the photographs were of the shooter. All things considered, Appellant's challenge to the purported suggestiveness of the pretrial identification procedures surrounding Dunkin's eyewitness identification testimony does not demonstrate actual or obvious error and, thus, there is no plain error. There was no due process violation arising from Dunkin's eyewitness identification testimony.
¶14 Appellant's challenge to Brummett's and Funkhouser's identification testimony also lacks merit. Neither Brummett nor Funkhouser were eyewitnesses to the shootings. Brummett testified he left the motel grounds after asking Appellant to leave Room 103. He heard gunshots while walking to a nearby convenience store. When Brummett returned he found both victims laying outside on the ground at the motel.
¶15 During his police interview, the detectives told Brummett someone had said Jay was the killer. The detectives then showed Brummett still photographs from the motel surveillance video of the shooter. Brummett identified the man shown in the photos as Appellant after being shown a photograph depicting the killer's shoes.
¶16 At trial, Brummett identified for the jury the man shown on the surveillance video leaving Room 103, then returning to the motel and shooting both victims, as Appellant. Brummett also identified both himself and Dunkin on the video during the events surrounding both shootings. Brummett testified he had known Appellant for fourteen years.
¶17 Funkhouser was inside Room 103 during the shootings. Funkhouser is Appellant's uncle and has known Appellant since he was a baby. Funkhouser was present when Appellant was asked to leave Room 103 by Brummett because of the argument. Funkhouser described how Dunkin arrived inside Room 103 after Appellant left and how he, Funkhouser, heard a "pop" outside. According to Funkhouser, Dunkin stepped in the doorway to Room 103, looked outside and said "Jay did it." According to Funkhouser, "Jay" is Appellant's nickname.
¶18 Funkhouser did not speak to authorities about this case until two days before his trial testimony, after he was arrested on a material witness warrant. Prior to his testimony Funkhouser met with the prosecutor, viewed the surveillance video and identified Appellant as the shooter. Funkhouser was appointed counsel before speaking with the prosecutor. Funkhouser's counsel was present during his interview with the State in which he identified Appellant on the video. At trial, Funkhouser once again viewed the surveillance video and identified Appellant.
¶19 On appeal, Appellant challenges the identification by Brummett and Funkhouser of Appellant on the video. The Supreme Court's constitutional due process cases relating to identification testimony do not apply to Brummett and Funkhouser's testimony. Those decisions are concerned with police misconduct resulting in the identification of a criminal suspect by an eyewitness to the crime. Perry, 565 U.S. at 238-239; Brathwaite, 432 U.S. at 112. These situations typically involve a witness's "encounter with a total stranger under circumstances of emergency or emotional stress. The witness'[s] recollection of the stranger can be distorted easily by the circumstances or by later actions of the police." Brathwaite, 432 U.S. at 112. See, e.g., Greene v. State, 229 A.3d 183, 190 (Md. 2020) ("The focus of the Supreme Court's 'identification law' jurisprudence is upon the imposition of due process limitations on efforts by the police to obtain from an eyewitness to the crime the identification of a criminal suspect.").
¶20 The same concerns do not arise from Brummett and Funkhouser's identifications of Appellant on the surveillance video. This amounted to appropriate lay opinion testimony concerning the shooter's identity based upon their familiarity with Appellant and their respective perceptions of the video. See 12 O.S.2011, §§ 2401-2403, 2701, 2704; United States v. Contreras, 536 F.3d 1167, 1170-1171 (10th Cir. 2008); United States v. Ingram, 600 F.2d 260, 261-262 (10th Cir. 1979). All things considered, Appellant was not deprived of a fundamentally fair trial in violation of due process from the admission of this testimony. Spencer v. Texas, 385 U.S. 554, 563-564 (1967); Lisenba v. California, 314 U.S. 219, 228 (1941). Because there was no actual or obvious error from the admission of the challenged evidence, there is no plain error. Propositions I and II are denied.
¶21 Proposition III. Appellant complains the trial court erred in admitting Funkhouser's testimony that Dunkin said "Jay did it" after hearing the "pop" and looking outside through the open door of Room 103. The record shows Funkhouser is hard of hearing and relies to an unknown extent on lip reading. Appellant complains the trial court should have required the State to demonstrate Funkhouser's proficiency as an expert in lip reading before allowing him to testify to Dunkin's statement about Appellant being the shooter.
¶22 Appellant did not object to Funkhouser's testimony and our review is for plain error. Coddington v. State, 2006 OK CR 34, ¶ 52, 142 P.3d 437, 451; Bowen v. State, 1984 OK CR 105, ¶ 42, 715 P.2d 1093, 1103. Appellant fails to show actual or obvious error. Funkhouser was a fact witness who was entitled to testify concerning his observations and interactions inside Room 103 the night of the murders. 12 O.S.2011, §§ 2601-2603. Upon taking the stand, Funkhouser was questioned by the trial judge concerning his hearing impairment and whether Funkhouser could hear. The prosecutor then laid a foundation for Funkhouser's testimony at the start of direct examination. Funkhouser acknowledged having difficulty hearing but testified if the prosecutor moved closer to him on the stand, he could read her lips and hear enough to answer questions. The record shows Funkhouser thereafter responded appropriately for the most part to the questions posed both by the State and defense counsel. This was true even when Funkhouser was asked to view the video monitor in the courtroom during his identification of Appellant on the surveillance video.
¶23 The trial court was in the best position to observe Funkhouser's testimony along with his ability to understand and respond to the questions presented. The record shows neither the parties nor the trial court had insurmountable difficulty communicating with Funkhouser after the disclosure about his hearing impairment and his ability to read lips for comprehension. Neither party suggested an interpreter was necessary to facilitate Funkhouser's testimony in light of his hearing impairment. See 12 O.S.2011, § 2604.
¶24 Defense counsel thoroughly cross-examined Funkhouser on his ability to actually make out and understand what Dunkin had said. On cross, Funkhouser testified he heard Dunkin "hollering" the statement about seeing Appellant and was also able to read his lips. Funkhouser testified similarly he could hear defense counsel's questions (albeit with some difficulty) in addition to reading counsel's lips. The record shows Funkhouser could hear some things, that he used lip reading to overcome his hearing impairment and communicate with others and that he was competent and capable of testifying. At best, the question of Funkhouser's ability to understand what Dunkin said was a question of fact for the jury. We note too that Dunkin himself admitted earlier in the trial to saying virtually the same thing reported by Funkhouser. Under the total circumstances, there was no actual or obvious error and, thus, no plain error, from admission of the challenged testimony. Proposition III is denied.
¶25 Proposition IV. Appellant challenges as hearsay testimony from Tulsa Police Sergeant David Walker that Brummett identified the shooter as Appellant after being shown by detectives a still photograph taken from the motel surveillance video. Appellant acknowledges our decision in Davis v. State, 2018 OK CR 7, 419 P.3d 271, authorizing the admission as substantive evidence of extrajudicial identification testimony from third parties present at the prior identification "so long as the declarant testifies at trial and is subject to cross-examination concerning the statement." Id., 2018 OK CR 7, ¶ 26, 419 P.3d at 280-281. Appellant tells us Davis should not apply to his case, however, because it was handed down after his trial and was not given retroactive effect by this Court.
¶26 First, Appellant did not object to the challenged testimony limiting our review to plain error. Davis, 2018 OK CR 7, ¶ 14, 419 P.3d at 278. Second, Appellant's argument ignores Davis's holding. We held in Davis that statutory amendments to the Oklahoma Evidence Code years earlier authorized the admission of third party testimony relating extrajudicial identification testimony. Id., 2018 OK CR 7, ¶¶ 21-27, 419 P.3d at 279-281 (citing 12 O.S.2011, §§ 2801-2802). We further held the effect of these statutory amendments was "to undermine the limits placed on the admission of extrajudicial identification testimony by this Court" in previous cases. Id., 2018 OK CR 7, ¶ 26, 419 P.3d at 280-281.
¶27 There was no need for this Court to make Davis retroactive in light of the governing statutes. These statutory amendments, which occurred in 1991 and 2002, predated Appellant's trial in the present case as in Davis. Appellant thus fails to show actual or obvious error from the admission of the challenged testimony which complied with those statutory amendments.
¶28 Third, Appellant's suggestion that an exception to Davis should apply here because Brummett did not actually witness the shooting, and thus did not identify Appellant after "perceiving" him, lacks merit. Brummett's pretrial identification of Appellant from a still photograph of the surveillance video fits comfortably within the express terms of 12 O.S.2011, § 2801(B)(1)(c).[2] Brummett made the extrajudicial identification of Appellant after perceiving him in person inside Room 103 before the shootings and in still photographs from the surveillance video shown to Brummett during a police interview. As mentioned earlier, Brummett testified at trial and was subject to cross-examination concerning the prior identification. Sgt. Walker's testimony concerning Brummett's out-of-court identification of Appellant thus was not hearsay and there was no actual or obvious error from its admission. Proposition IV is denied.
¶29 Proposition V. Appellant contends his Sixth Amendment right to confront the witnesses against him was violated by the medical examiner's testimony. The record shows Dr. Joshua Lanter conducted the autopsy on Rodney McGee and testified to his findings concerning McGee's injuries, cause of death and manner of death. Dr. Lanter also sponsored two photographs showing McGee's injuries. The record shows Dr. Andrea Weins performed the autopsy of Leroy Coleman. By the time of trial, however, she was no longer employed by the Office of Chief Medical Examiner. Prior to trial, Dr. Lanter reviewed all of the records contained within the medical examiner's case file for Coleman's autopsy. This included the report of investigation by medical examiner, investigative narrative, report of autopsy, autopsy diagram, archived autopsy photographs, radiographs, toxicology report, medical records and police reports surrounding Coleman's death. Dr. Lanter was asked "to come up with [his] own opinion on [the] cause and manner of death" for Coleman based on this information.
¶30 Dr. Lanter described for the jury the external and internal injuries observed for Coleman as reflected in the autopsy report, photographs and other documents in the case file. This included a description of the gunshot's entry wound in the left lateral neck and the bullet's path inside Coleman's body. Dr. Lanter observed too based on his notes from the autopsy that Coleman died two days after being shot. Dr. Lanter opined the mechanism of death resulted from a combination of things but mostly bleeding from the injury to Coleman's left lung caused by the bullet's path as well as tissue damage to the lung itself. Dr. Lanter observed that, according to the autopsy report and photographs, Coleman received medical treatment for his gunshot wound including support from "all kinds of devices that were used to try to keep him alive" including a chest tube. Dr. Lanter opined the treatment seemed appropriate based on Coleman's condition. Dr. Lanter explained how the autopsy report showed Coleman had a left hemothorax, meaning there was blood in his left chest cavity. Coleman had approximately 400 milliliters of blood in the left chest cavity which was consistent with the use of a chest tube to remove the blood.
¶31 Dr. Lanter was not surprised Coleman lived a couple of days despite his injury because it is not instantaneously lethal but can be over time. Dr. Lanter opined Coleman would not necessarily lose consciousness instantly from this gunshot wound. Dr. Lanter acknowledged that Coleman's injuries acted somewhat like suffocation by drowning because of blood and fluid in the lungs replacing air. Dr. Lanter acknowledged reviewing the photographs from the autopsy and sponsored the admission of three such photographs collectively showing the entrance wound on Coleman's left neck and the location on Coleman's left back where the bullet was removed.
¶32 Dr. Lanter concluded in his expert opinion, based on his review of the materials in the case file, that Coleman's cause of death was a gunshot wound to the neck. Further, Dr. Lanter opined the manner of death was homicide. Notably, defense counsel conducted no cross-examination. During a short bench conference immediately before passing the witness, defense counsel told the trial court he was foregoing cross-examination of Dr. Lanter because "I don't have any need to get into it, quite honestly."
¶33 On appeal, Appellant contends Dr. Lanter's testimony concerning Coleman's autopsy violated the Confrontation Clause because it regurgitated Dr. Weins's findings and conclusions. Appellant contends his Sixth Amendment right to confront the witnesses against him was violated because Dr. Weins was not declared an unavailable witness and Appellant did not have a previous opportunity to cross-examine her. 12 O.S.2011, § 2804(A), (B)(1). Our review of this claim is limited to plain error because Appellant did not object to Dr. Lanter's testimony. Tafolla v. State, 2019 OK CR 15, ¶ 22, 446 P.3d 1248, 1259.
¶34 Appellant fails to show actual or obvious error with this claim. The accused in a criminal prosecution has a constitutional right to cross-examine the witnesses against him. See Crawford v. Washington, 541 U.S. 36, 61--62 (2004); U.S. Const. amend. VI; Okla. Const. art. 2, § 20. The Supreme Court held in Crawford that the Confrontation Clause prohibits the admission of testimonial hearsay unless 1) the witness is unavailable; and 2) the defendant had a prior opportunity to cross-examine the witness. Crawford, 541 U.S. at 68; Willis v. State, 2017 OK CR 23, ¶ 14, 406 P.3d 30, 34.
¶35 There is no dispute that Dr. Weins's autopsy report is a testimonial statement for Sixth Amendment purposes. Cuesta-Rodriguez v. State, 2010 OK CR 23, ¶ 35, 241 P.3d 214, 228. Dr. Weins's report, however, was not admitted as an exhibit at Appellant's trial. Nor was Dr. Lanter offered as a witness to present Dr. Weins's findings and conclusions. All of his testimony was based upon his own review of the medical examiner's files concerning Coleman's death. Dr. Lanter's opinion testimony concerning the cause and manner of Coleman's death was admissible expert testimony. 12 O.S.2011, §§ 2702-2704. There was no Sixth Amendment violation from this aspect of Dr. Lanter's testimony because he was available for cross-examination about those opinions. Cuesta-Rodriguez, 2010 OK CR 23, ¶ 39, 241 P.3d at 229.
¶36 Dr. Lanter's disclosure of the facts underlying his expert opinion was likewise permissible to explain the basis for his testimony. 12 O.S.2011, §§ 2703, 2705; see also Miller v. State, 2013 OK CR 11, ¶ 113, 313 P.3d 934, 973-974, overruled on other grounds, Harris v. State, 2019 OK CR 22, ¶ 69, 450 P.3d 933, 958; Marshall v. State, 2010 OK CR 8, ¶ 30, 232 P.3d 467, 475-476. To the extent Dr. Lanter may have relayed Dr. Weins's conclusions and findings from the original autopsy report itself, such would constitute an actual or obvious Confrontation Clause violation. Cuesta-Rodriguez, 2010 OK CR 23, ¶ 39, 241 P.3d at 229; Marshall, 2010 OK CR 8, ¶ 31, 232 P.3d at 475-476. Any error was harmless beyond a reasonable doubt, however, considering both defense counsel's failure to cross-examine Dr. Lanter and that the cause and manner of Coleman's death was never in dispute at trial.[3] Chapman v. California, 386 U.S. 18, 24 (1967); Cuesta-Rodriguez, 2010 OK CR 23, ¶ 40, 241 P.3d at 230. Proposition V is denied.
¶37 Proposition VI. Appellant contends that the alleged cumulative presentation of evidence to the jury warrants relief. Specifically, Appellant complains the jury was shown the motel surveillance video four times during the State's case in chief and a fifth time during closing argument. The record shows the State introduced and published a portion of the video during Detective Ronnie Leatherman's testimony. The prosecutor observed this was by agreement with the defense. Det. Leatherman provided no comment or narrative when the video was published. The prosecutor later showed an excerpt from the video to Dunkin, Brummett and Funkhouser during their respective testimony. These witnesses each identified Appellant on the video as the shooter. Dunkin and Brummett also identified themselves when they appeared on the video.
¶38 Evidentiary rulings are left to the trial court's broad discretion. See Wall v. State, 2020 OK CR 9, ¶ 5, 465 P.3d 227, 231-232. Appellant admits that he did not object at trial to the playing of the surveillance video with these witnesses. Our review is therefore limited to plain error. See Williams v. State, 2008 OK CR 19, ¶ 71, 188 P.3d 208, 223. Appellant fails to show actual or obvious error. The real complaint here is Appellant's belief that the surveillance video should not have been shown during the testimony of Dunkin, Brummett and Funkhouser. The challenged identification testimony from Dunkin, Brummett and Funkhouser was highly relevant both to corroborate their testimony and to identify Appellant as the killer. 12 O.S.2011, §§ 2401-2402. Relevant evidence may be disallowed "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." 12 O.S.2011, § 2403. The Court "gives proposed evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Hammick, 2019 OK CR 21, ¶ 18, 449 P.3d at 1277.
¶39 Applying this standard, the probative value of the surveillance video was not outweighed by the danger of unfair prejudice, confusion of the issues or misdirection of the jury. Appellant was not deprived of a fundamentally fair trial with this testimony. There was no actual or obvious error from playing portions of the video for each of these witnesses. We likewise find no error from the prosecutor's use of the video during closing argument. Appellant was not deprived of a fundamentally fair trial with this particular portion of the State's argument which represented reasonable comment on the record evidence. There was no actual or obvious error and thus no plain error from the prosecutor's use of this exhibit during closing. See Alverson v. State, 1999 OK CR 21, ¶ 39, 983 P.2d 498, 513. Proposition VI is denied.
¶40 Proposition VII. During the trial's bifurcated sentencing phase, the State introduced evidence of Appellant's three prior felony convictions as alleged in the Page Two supplemental Information,
[4] pursuant to 21 O.S.Supp.2013, § 701.10-1.[5] Notably, Appellant made no effort to challenge the State's evidence concerning his prior convictions. Instead, defense counsel asked simply for mercy from the jury in requesting a sentence of life imprisonment with the possibility of parole. Appellant complains that § 701.10-1 does not allow for the admission of mitigating evidence to rebut the State's admission of what can only be deemed aggravating evidence from the prior felony convictions. Appellant argues this circumstance violates his fundamental right to due process and that § 701.10-1 is unconstitutional.
¶41 Appellant did not raise this same argument below, and did not attempt to introduce mitigating evidence at sentencing, thus waiving review on appeal of all but plain error. There is no actual error because we previously rejected this same argument in Vanderpool v. State, 2018 OK CR 39, ¶¶ 40-48, 434 P.3d 318, 327-329. Applying that decision here, we find Appellant was not deprived of a fundamentally fair sentencing proceeding in violation of due process. The State provided Appellant notice of the prior felony convictions it intended to prove in the supplemental Information. Appellant too was afforded the opportunity to challenge the State's evidence as to the existence or validity of his prior felony convictions during the trial's bifurcated sentencing stage. Both parties had the opportunity to introduce relevant evidence concerning these priors. This is so despite the Legislature's failure to authorize the introduction of mitigating evidence in noncapital murder trials. There was no error, plain or otherwise, arising during the sentence phase. Proposition VII is denied.
¶42 Proposition VIII. Appellant alleges several instances of prosecutorial misconduct during closing argument. This Court will not grant relief for prosecutorial misconduct unless, when viewed in the context of the entire trial, the misconduct rendered the trial fundamentally unfair such that the jury's verdict is unreliable. Darden v. Wainright, 477 U.S. 168, 181 (1986); Tryon v. State, 2018 OK CR 20, ¶ 137, 423 P.3d 617, 654. Our review is further limited here because none of the challenged remarks by the prosecutor drew an objection at trial. We review Appellant's prosecutorial misconduct claims for plain error only. Bramlett v. State, 2018 OK CR 19, ¶ 36, 422 P.3d 788, 799. Appellant fails to show actual or obvious error. The challenged comments do not represent prosecutorial misconduct but instead reasonable comment on the record evidence. See Chadwell v. State, 2019 OK CR 14, ¶ 10, 446 P.3d 1244, 1247 ("Both sides have wide latitude to discuss the evidence and reasonable inferences therefrom."). Appellant was not deprived of a fundamentally fair trial from the State's closing argument and there is no plain error. Proposition VIII is denied.
¶43 Proposition IX. Appellant contends his trial counsel was constitutionally ineffective. To prevail on an ineffectiveness claim, Appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). See Harrington v. Richter, 562 U.S. 86, 104 (2011) (discussing Strickland two-part test).
¶44 Appellant contends trial counsel failed to present or utilize available evidence to discredit the identification testimony of Dunkin and Brummett. Appellant complains trial counsel was ineffective for failing to introduce into evidence the video of Det. John Brown's interview of Dunkin. Appellant says the video shows Dunkin's pretrial identification of his photo from the six-man photo lineup was impermissibly suggestive and "clearly shows that Dunkin's pre-trial identification of [Appellant] was elicited by police suggestion, at best, and by police coercion, at worst."
¶45 Appellant claims too that defense counsel should have confronted Sgt. Walker and/or Brummett with statements contained in a police report detailing Brummett's interview with police. Appellant believes the report would further demonstrate the suggestive nature of Brummett's pretrial identification of Appellant. Appellant further asserts that trial counsel was ineffective for failing to call Tyler Jones to testify concerning Dunkin's statement that he did not like Appellant and that he would be released from jail if he testified for the State.
¶46 These claims are based on evidence outside the trial record. Appellant tenders the video recording of Dunkin's police interview, the police report concerning Brummett's police interview and an affidavit from Tyler Jones as exhibits to his application for evidentiary hearing.
[6] Rule 3.11(B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2020) allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to utilize available evidence which could have been made available during the course of trial. Simpson v. State, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 905-906. This Court reviews the application along with supporting affidavits to see if it contains sufficient evidence to show this Court by clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence. Notably, this standard is less demanding than the test imposed by Strickland. Id.
¶47 In the present case, Appellant fails to show by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence. He is thus not entitled to an evidentiary hearing for his ineffective assistance of counsel claims which are based on non-record evidence. Rule 3.11(B)(3)(b)(i), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2020). Appellant's application for evidentiary hearing on his ineffectiveness claims is DENIED.
¶48 Finally, Appellant complains trial counsel was ineffective for failing to object on the grounds raised in Propositions III, IV, V, VI and VIII. We denied relief above for these various claims. Trial counsel thus was not ineffective for failing to raise meritless claims. See Logan v. State, 2013 OK CR 2, ¶ 11, 293 P.3d 969, 975 ("The omission of a meritless claim . . . cannot constitute deficient performance; nor can it have been prejudicial."). Proposition IX is denied.
¶49 Proposition X. We deny relief based on Appellant's claim of cumulative error in this case. Appellant has not proven the existence of two or more errors in this appeal that we can cumulate. See Bosse v. State, 2017 OK CR 10, ¶ 93, 400 P.3d 834, 866. Review of the record shows this is simply not a case where numerous irregularities during Appellant's trial tended to prejudice his rights or otherwise deny him a fair trial. See Tryon, 2018 OK CR 20, ¶ 144, 423 P.3d at 655. Proposition X is denied.
DECISION
¶50 The Judgments and Sentences of the District Court are AFFIRMED. Appellant's Application to Supplement the Appeal Record or, In the Alternative, Request for Evidentiary Hearing Pursuant to Rule 3.11 on Sixth Amendment Claim of Ineffective Assistance of Counsel is DENIED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2020), the MANDATE is ORDERED issued upon the delivery and filing of this decision.
AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE WILLIAM J. MUSSEMAN, JR., DISTRICT JUDGE




APPEARANCES AT TRIAL
MARK CAGLE
STEPHEN LEE
ATTORNEYS AT LAW
115 WEST 3RD STREET
TULSA, OK 74103
COUNSEL FOR DEFENDANT

JULIE DOSS
JOHN TJEERDSMA
ASST. DISTRICT ATTORNEYS
TULSA COUNTY COURTHOUSE
500 S. DENVER AVENUE
SUITE 900
TULSA, OK 74103
COUNSEL FOR THE STATE

APPEARANCES ON APPEAL 
RAYMOND E. DENECKE
OKLA. INDIGENT DEFENSE SYSTEM
P.O. BOX 926
NORMAN, OK 73070
COUNSEL FOR APPELLANT

MIKE HUNTER
ATTORNEY GENERAL OF OKLAHOMA
KATHERINE R. MORELLI
ASST. ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
COUNSEL FOR APPELLEE










OPINION BY: HUDSON, J.
LEWIS, P.J.: CONCUR KUEHN, V.P.J.: CONCUR IN RESULTS LUMPKIN, J.: CONCUR ROWLAND, J.: CONCUR 
FOOTNOTES
[1] In Proposition I, Appellant challenges the reliability of all three witnesses' identification testimony. In Proposition II, Appellant specifically challenges the police photo lineup presented to Levi Dunkin as being impermissibly suggestive.
[2] Section 2801(B)(1)(c) provides in pertinent part the following:
B. A statement is not hearsay if:
1. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
* * *
c. one of identification of a person made after perceiving the person[.]
[3] Defense counsel told the jury during opening statement that "two men lost their lives. Nobody is contesting that fact. Two men were murdered that night."
[4] Appellant's prior felony convictions were for Attempted First Degree Burglary in Tulsa County; Robbery with a Dangerous Weapon in Okfuskee County; and Felon in Possession of Firearm and Ammunition in federal court.
[5] Title 21 O.S.Supp.2013, § 701.10-1 provides in pertinent part the following:


Upon conviction or adjudication of guilt of a defendant of murder in the first degree, wherein the state is not seeking the death penalty but has alleged that the defendant has prior felony convictions, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to life imprisonment without parole or life imprisonment, wherein the state shall be given the opportunity to prove any prior felony convictions beyond a reasonable doubt. The proceeding shall be conducted by the trial judge before the same trial jury as soon as practicable without presentence investigation.
[6] See Application to Supplement the Appeal Record or, In the Alternative, Request for Evidentiary Hearing Pursuant to Rule 3.11 on Sixth Amendment Claim of Ineffective Assistance of Counsel, filed with this Court by Appellant on November 19, 2018.




KUEHN, V.P.J., CONCURRING IN RESULT:
¶1 I agree with the Majority that Appellant's convictions and sentences should be affirmed, and thus concur in result.
¶2 I write separately to address the issue raised in Proposition VII. First, I note that Appellant objected to the admission of evidence of his prior convictions in the sentencing stage of trial; defense counsel clearly objected on the basis that the State should not put on evidence that might act as a sentencing enhancement for first degree murder. The Majority suggests that Appellant waived this claim in part by failing to try and introduce evidence in mitigation. As no law would permit admission of such evidence, and in fact it is plainly barred in a non-capital jury sentencing proceeding, I cannot fault defense counsel for failing to present it.
¶3 Appellant raises this as a constitutional issue, arguing that the statute allowing the State to present evidence of his prior convictions violates due process. Because Appellant attacks the constitutionality of a statute, I review the claim de novo. Weeks v. State, 2015 OK CR 16, ¶ 16, 362 P.3d 650, 654. To succeed on a facial challenge, Appellant must typically establish that no set of circumstances exists under which the law would be valid, or that the statute lacks any plainly legitimate sweep. United States v. Stevens, 559 U.S. 460, 472 (2010). Where a constitutional question is squarely raised, we must decide it. Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 375 (2010) (Roberts, C.J., concurring). Reviewing the claim de novo, I would find Section 701.10-1 does not violate due process. I would further find that Appellant was not entitled to present mitigating evidence in the second stage of this noncapital case.
¶4 The Majority summarily rejected this claim, relying on our previous discussion in Vanderpool v. State, 2018 OK CR 39, 434 P.3d 318. Upon further review, I have concluded that, although the Vanderpool result was correct -- 21 O.S. § 701.10-1 does not violate due process -- its approach was based on a misunderstanding of the statute. This misunderstanding is shared by both Appellant and the Majority here, who discuss the issue as one of presentation of evidence in aggravation or mitigation of the charged crime. It is not.
¶5 Appellant's claim is based on the mistaken premise that Section 701.10-1 allows the State to present aggravating evidence, similar to that allowed in capital cases, and thus as in capital cases defendants should be allowed to present a wide range of mitigating evidence to counter this. This is a serious misreading of the statute. The Legislature has enacted individualized sentencing proceedings allowing for aggravating and mitigating circumstances in capital cases, and specific individualized sentencing proceedings are also required in juvenile life without parole cases. 21 O.S.Supp.2013, § 701.10; Stevens v. State, 2018 OK CR 11, ¶ 16, 422 P.3d 741, 746; Luna v. State, 2016 OK CR 27, ¶ 21, 387 P.3d 956, 962-63. There are no other provisions allowing for individualized sentencing in noncapital cases, and Section 701.10-1 does not so provide. Ashton v. State, 2017 OK CR 15, ¶ 53, 400 P.3d 887, 900, overruled on other grounds by Williamson v. State, 2018 OK CR 15, 422 P.3d 752.
¶6 Despite Appellant's arguments otherwise, Section 701.10-1 is a sentencing enhancement statute. The general sentencing enhancement statute provides that a jury may impose a greater punishment on a defendant if it finds that the defendant has prior felony convictions. 21 O.S.Supp.2018, § 51.1. This is true of other, more specialized enhancement statutes as well. See, e.g., 63 O.S.Supp.2018, § 2-401(F). Here, the Legislature determined that in noncapital first degree murder cases, the sentencing range of life or life without parole may be affected by a defendant's past acts, in the form of prior felony convictions. That is, the Legislature determined that the sentencer may have discretion to determine and enhance a sentence based on a very narrow category of evidence.
¶7 There is no due process violation. As Vanderpool recognized, if prior convictions are alleged a defendant may present evidence challenging the existence or validity of those convictions. Vanderpool, 2018 OK CR 39, ¶ 46, 434 P.3d at 328; see also, e.g., Roney v. State, 1991 OK CR 114, § 10, 819 P.2d 286, 288 (defendant has the burden to challenge evidence of prior convictions). Thus, the State is limited to presenting a limited category of evidence -- prior convictions -- and a defendant has the right to challenge that specific evidence, within those limitations. This is all that due process requires.
¶8 The limited evidence permitted under § 701.10-1 is not, as Appellant claims, a broad attack on a defendant's character; nor is it evidence in aggravation of the charged crime. It would be unnecessary and inappropriate to allow a defendant to counter evidence of prior convictions with broad mitigating evidence showcasing his character or particular circumstances. That would only be appropriate in an individualized sentencing proceeding -- proceedings which the Legislature has not established for adult noncapital felonies. Ashton, 2017 OK CR 15, ¶ 53, 400 P.3d at 900; Malone v. State, 2002 OK CR 34, ¶ 7, 58 P.3d 208, 210. The statute is constitutional, and Appellant was not entitled to present evidence in mitigation of the crime.
¶9 I also note that I review the claim in Proposition V for plain error. Because Appellant did not object to the medical examiner's testimony, I do not consider whether the error was harmless beyond a reasonable doubt, as discussed in Chapman v. California, 386 U.S. 18, 24 (1967) and Neder v. United States, 527 U.S. 1, 17 (1999). In those cases, the constitutional error was preserved for appellate review by timely objection at trial. I agree with the Majority that there was no error in the testimony, and thus no plain error.





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 
 2018 OK CR 7, DAVIS v. STATE
Discussed at Length
Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1987 OK CR 253, 746 P.2d 203, WEBB v. STATE
Discussed at Length
 1991 OK CR 114, 819 P.2d 286, RONEY v. STATE
Discussed
 2002 OK CR 34, 58 P.3d 208, MALONE v STATE
Discussed
 2006 OK CR 34, 142 P.3d 437, CODDINGTON v. STATE
Discussed
 2008 OK CR 19, 188 P.3d 208, WILLIAMS v. STATE
Discussed
 2010 OK CR 6, 230 P.3d 888, SIMPSON v. STATE
Discussed
 2010 OK CR 8, 232 P.3d 467, MARSHALL v. STATE
Discussed at Length
 2010 OK CR 23, 241 P.3d 214, CUESTA-RODRIGUEZ v. STATE
Discussed at Length
 2011 OK CR 30, 267 P.3d 114, POSTELLE v. STATE
Discussed at Length
 2013 OK CR 2, 293 P.3d 969, LOGAN v. STATE
Discussed
 2013 OK CR 11, 313 P.3d 934, MILLER v. STATE
Discussed
 2015 OK CR 16, 362 P.3d 650, WEEKS v. STATE
Discussed
 2016 OK CR 27, 387 P.3d 956, LUNA v. STATE
Discussed
 2017 OK CR 10, 400 P.3d 834, BOSSE v. STATE
Discussed
 2017 OK CR 15, 400 P.3d 887, ASHTON v. STATE
Discussed at Length
 2017 OK CR 23, 406 P.3d 30, WILLIS v. STATE
Discussed
 2018 OK CR 7, 419 P.3d 271, DAVIS v. STATE
Cited
 2018 OK CR 8, 419 P.3d 283, LAMAR v. STATE
Discussed
 2018 OK CR 11, 422 P.3d 741, STEVENS v. STATE
Discussed
 2018 OK CR 15, 422 P.3d 752, WILLIAMSON v. STATE
Discussed
 2018 OK CR 19, 422 P.3d 788, BRAMLETT v. STATE
Discussed
 2018 OK CR 20, 423 P.3d 617, TRYON v. STATE
Discussed at Length
 2018 OK CR 39, 434 P.3d 318, VANDERPOOL v. STATE
Discussed at Length
 2019 OK CR 14, 446 P.3d 1244, CHADWELL v. STATE
Discussed
 2019 OK CR 15, 446 P.3d 1248, TAFOLLA v. STATE
Discussed
 2019 OK CR 21, 449 P.3d 1272, HAMMICK v. STATE
Discussed at Length
 2019 OK CR 22, 450 P.3d 933, HARRIS v. STATE
Discussed
 2020 OK CR 9, 465 P.3d 227, WALL v. STATE
Discussed
 1999 OK CR 21, 983 P.2d 498, 70 OBJ 1566, Alverson v. State
Discussed
 1984 OK CR 105, 715 P.2d 1093, BOWEN v. STATE
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2403, Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Cumulative Nature of Evidence
Cited
 12 O.S. 2604, Interpreters
Cited
 12 O.S. 2703, Bases of Opinion Testimony by Experts
Cited
 12 O.S. 2801, Definitions
Cited
 12 O.S. 2804, Hearsay Exception - Declarant Unavailable
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 3001.1, Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 51.1, Punishment for Second and Subsequent Offenses after Conviction of Offense Punishable by Imprisonment in State Penitentiary
Cited
 21 O.S. 701.7, Murder in the First Degree
Cited
 21 O.S. 701.10, Sentencing Proceedings for First Degree Murder - State Seeking Death Penalty
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-401, Prohibited Acts A - Penalties
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA