**John Robert SEARS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–524.**

Court of Criminal Appeals of Oklahoma.

·Nov. 19, 1974.

John Robert Sears was convicted for the offense of Unlawful Possession of Mari-

juana with Intent to Distribute; was sentenced to eight (8) years imprisonment and fined One Thousand ($1,000.00) Dollars, and appeals. Reversed and remanded.

C. Rabon Martin of Baker, Baker & Martin, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant John Robert Sears, hereinafter referred to as defendant, was convicted by jury verdict for the offense of Unlawful Possession of Marijuana with Intent to Distribute, in violation of 63 O.S.1971, § 2–401, in the District Court, Tulsa County, Case No. CRF–73–1133. In accordance with the verdict, defendant was sentenced to imprisonment in the state penitentiary for a term of eight (8) years and fined in the amount of One Thousand ($1,000.00) Dollars.

In the first proposition of error urged on appeal, defense counsel asserts that the search of the defendant's premises was illegal and therefore the evidence obtained should have been suppressed. The claim that the search was unlawful concerns the manner in which the officers executed the search without questioning the validity of the affidavit or the warrant.

On June 19, 1973, Officers William McDonald and Frank Myers of the Tulsa Police Department, together with an unidentified uniformed police officer, went to the defendant's apartment at 4807 South Darlington Avenue in Tulsa to conduct a search pursuant to a warrant issued by the District Court. According to testimony given by Officer McDonald, he and the uniformed officer went to the front door, and Officer Myers went to the rear of the apartment. Through a large window in front of the apartment, Officer McDonald observed the defendant seated at the kitchen table. Officer McDonald stated that the door latch was not in the groove and

that when he knocked, the pressure from his knocking caused the door to open; however, Officer McDonald testified that he may have had to push the door open even further in order to enter. Officer McDonald and the other officer then walked in, identified themselves to the defendant, and served him with a copy of the search warrant.

In an upstairs bedroom, which was devoid of any furniture or clothing, the officers found a trunk containing three cellophane packages each of which held approximately a half pound of a substance later identified as marijuana. Along with the marijuana the officers found several garbage bags, a knife and a set of scales. Approximately $700.00 in cash was found on the defendant's person, and in the living room the officers found a box which contained a one-ounce bag of marijuana.

Defendant's Motion to Suppress the evidence on the grounds of the illegality of the search was overruled. It is of some interest to note that at preliminary hearing the Magistrate held the evidence to be insufficient, dismissed the charge of Possession of Marijuana with Intent to Distribute, and bound the defendant over on a charge of simple Possession. The State, however, appealed and the District Court reinstated the charge of Possession with Intent to Distribute. The above items of evidence obtained by the search were admitted at defendant's trial.

Counsel asserts that the search was not executed in the manner prescribed by law as set forth in 22 O.S.1971, § 1228 which provides that when serving a search warrant:

"The officer may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant, if, after notice of his authority and purpose he be refused admittance."

Counsel argues that the officers did not comply with the express provisions of the statute as they forcibly entered defendant's apartment without first announcing their identity and purpose to the defendant and requesting his permission to enter and serve the warrant.

We find the defendant's contentions are well taken and we agree that the manner in which this search was conducted requires reversal of defendant's conviction. This being so, the Court deems it unnecessary to discuss the other assignments of error raised by defendant.

In the case of Kelso v. State, 97 Okl.Cr., 215, 260 P.2d 864 (1953), the petitioners alleged that officers had forced entry into their home without first identifying themselves, stating their purpose and seeking permission to enter. The search in *Kelso* was not invalidated because, there, unlike the instant case, the issue was not preserved by timely motion and the petitioners' allegations were not sustained by the evidence. In *Kelso,* this Court declared, at page 866, that "The statutory restrictions surrounding the serving of a warrant . . . should be strictly observed . . . "; and further, the Court pronounced the following rule in its Syllabus:

"Before an officer to whom a search warrant is directed is authorized to forcibly enter a house to execute a warrant, he should inform the inhabitant of his authority and he may not forcibly enter the house until he is denied admittance. 22 O.S.1951 § 1228."

Defense counsel relies on the United States Supreme Court's decision in Sabbath v. United States, 391 U.S. 585, 88 S. Ct. 1755, 20 L.Ed.2d 828 (1968), in support of his argument that the officers' entrance into defendant's apartment constituted a forcible entry which required prior announcements of identity and purpose and request for permission to enter, even though the door was unlocked and not fully closed. In *Sabbath,* supra, the Supreme Court was presented with a very similar factual situation involving 18 U.S.C. §

3109 [1], a statute which is virtually identical to 22 O.S. § 1228. Federal agents had followed their informer to defendant's apartment where the informer was to sell cocaine to the defendant. After the informer entered, the agents knocked, waited a few seconds and, when there was no response, they opened the unlocked door and entered the apartment en masse, several agents having their guns drawn. Cocaine was found under the couch where Sabbath was sitting and he was arrested for possession. The issue presented to the Court was whether or not the agents' method of entry was consonant with Federal law. The Court of Appeals of the Ninth Circuit had held that by opening the closed, but unlocked, door to petitioner's apartment the agents did not "break open" the door within the meaning of 18 U.S.C. § 3109 and, therefore, they were not required by that statute to make a prior announcement of their authority and purpose. The Supreme Court reversed and the following language from *Sabbath* is helpful in our determination of the case at bar. The Court stated, id. at 589, 88 S.Ct. at 1758, 20 L.Ed.2d at 833, that:

> "In Miller v. United States [357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958)], the common-law background to § 3109 was extensively examined. The Court there concluded, id., at 313, 78 S.Ct. at 1198; 2 L.Ed.2d at 1340:
>
>> 'The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American law, had declared in § 3109 the reverence of the law for the individual's right of privacy in his house.'
>
> \* \* \* \* \* \*
>
> "Considering the purposes of § 3109, it would indeed be a 'grudging application'

to hold, as the Government urges, that the use of 'force' is an indispensable element of the statute. To be sure, the statute uses the phrase 'break open' and that connotes some use of force. But linguistic analysis seldom is adequate when a statute is designed to incorporate fundamental values and the ongoing development of the common law.[5]"

The footnote, in part, sets forth the following:

> "While distinctions are obvious, a useful analogy is nonetheless afforded by the common and case law development of the law of burglary: a forcible entry has generally been eliminated as an element of that crime under statutes using the word 'break,' or similar words. (Citations omitted)
>
> "'What constitutes "breaking" seems to be the same as in burglary; lifting a latch, turning a door knob, unhooking a chain or hasp, removing a prop to, or *pushing open,* a closed door of entrance to the house,—even a closed screen door . . . is a breaking. . . .'" (Emphasis added)

The Supreme Court held that:

> "An unannounced intrusion into a dwelling—what § 3109 basically proscribes—is no less an unannounced intrusion whether officers break down a door, force open a chain lock on a partially open door, open a locked door by use of a passkey, or, as here, open a closed but unlocked door. The protection afforded by, and the values inherent in, § 3109 must be 'governed by something more than the fortuitous circumstance of an unlocked door.' Keiningham v. United States, 109 U.S.App.D.C. 272, 276, 287 F.2d 126, 130 (1960)."

In accordance with Sabbath v. United States, supra, we hold that under the facts of this case the officers forcibly entered

---

1. "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to deliberate himself or a person aiding him in the execution of the warant."

the defendant's apartment without first announcing their identity and purpose and requesting permission to enter. Such action is contrary to the provisions of the law of Oklahoma as set forth by the Legislature in 22 O.S.1971, § 1228 and defendant's Motion to Suppress should have been granted.

In passing, the Court takes cognizance of the fact that very recently Congress repealed the 1970 Federal statute authorizing officers to apply for "no-knock" search warrants in certain drug investigations [2] and a similar D.C.Code provision [3]. The reason for this Congressional action arose from the abuse by federal agents of the "no-knock" search warrants which resulted in terrorizing and abusing the rights of law-abiding citizens. (Although the "no-knock" provisions have been repealed, there are several civil suits pending against these officers).

We believe the Legislature of the State of Oklahoma displayed foresight and wisdom by refusing to cast out our announcement of authority and purpose requirement and implementing in its stead a once-popular, and now discredited, "no-knock" entrance procedure. In so doing, the Legislature stood fast by our traditional values and guarded the fundamental rights of all our citizens.

Our holding today, in keeping with our statute and traditions of the common law, should not be construed that exigent circumstances might exist forming the basis for an exception to the statutory provisions, as in a situation where the officers are aware that the occupants of a house are armed and dangerous and strict compliance with the statute would expose the officers to great peril, injury, or death.

This case is accordingly reversed and remanded for further proceedings consistent with this opinion.

BLISS, P. J., and BRETT, J., concur.

2. 21 U.S.C. § 879.

3. D.C.Code Ann. § 23–521, 23–522, 84 Stat. 473.