OSCN Found Document:WASHINGTON v. STATE

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 WASHINGTON v. STATE
2023 OK CR 22
Case Number: F-2021-692
Decided: 12/21/2023
DOMINIC WASHINGTON, Appellant v. THE STATE OF OKLAHOMA, Appellee

Cite as: 2023 OK CR 22, __ __

 

SUMMARY OPINION
MUSSEMAN, JUDGE:
¶1 Appellant, Dominic Washington, appeals his Judgment and Sentence from the District Court of Oklahoma County, Case No. CF-2019-4504, for Count 1, Murder in the First Degree in violation of 21 O.S.Supp.2012, § 701.7; and Count 3, Shooting with Intent to Kill in violation of 21 O.S.2011, § 652(A).[1] 
¶2 The Honorable Amy Palumbo, District Judge, presided over Washington's jury trial and sentenced him, in accordance with the jury's verdict, to life as to Count 1 and fifteen years as to Count 3.[2] The Judge ordered the sentences to run consecutively. Washington appeals his judgment and sentence and raises the following issues:

I. whether the State's evidence was insufficient to support Appellant's convictions;
II. whether Appellant's due process rights were violated by the admission of inflammatory, irrelevant, and cumulative evidence under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution;
III. whether Appellant was denied his Sixth and Fourteenth Amendment right to confront witnesses against him when the trial court admitted the documents attached to the report of the Medical Examiner;
IV. whether evidentiary harpoons violated Appellant's right to a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution, and Article II, § 20 of the Oklahoma Constitution;
V. whether the pre-trial identification procedures employed in this case were so unnecessarily suggestive and conducive to irreparable mistaken identification that Appellant's due process rights were violated;
VI. whether Appellant received ineffective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution; and
VII. whether the accumulation of errors deprived Appellant of a fair trial.
¶3 We affirm the Judgment and Sentence of the district court.

I.
¶4 In his first proposition, Appellant claims there was insufficient evidence presented at trial to identify him as the shooter. The ultimate question of sufficiency of the evidence should be resolved with deference to the fact finder and in a light most favorable to the State. Dodd v. State, 2004 OK CR 31, ¶ 80, 100 P.3d 1017, 1041; see also Spuehler v. State, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04. "[T]his Court does not reweigh conflicting evidence or second-guess the decision of the fact-finder; we accept all reasonable inferences and credibility choices that tend to support the verdict." Wall v. State, 2020 OK CR 9, ¶ 20, 465 P.3d 227, 234; see also Coddington v. State, 2006 OK CR 34, ¶ 70, 142 P.3d 437, 456. We further recognize that "the law makes no distinction between direct and circumstantial evidence and either, or any combination of the two, may be sufficient to support a conviction." Mason v. State, 2018 OK CR 37, ¶ 13, 433 P.3d 1264, 1269 (quoting Mitchell v. State, 2018 OK CR 24, ¶ 11, 424 P.3d 677, 682). We consider all the evidence admitted at trial in reviewing a challenge to the sufficiency of the evidence regardless of whether the evidence was properly admitted. McDaniel v. Brown, 558 U.S. 120, 130-31 (2010). We examine pieces of evidence together in context rather than in isolation, and we will affirm a conviction so long as, from the inferences reasonably drawn from the record as a whole, the jury might fairly have concluded the defendant was guilty beyond a reasonable doubt. Mason, 2018 OK CR 37, ¶ 13, 433 P.3d at 1269.
¶5 There was sufficient evidence presented at trial that a rational trier of fact could have found Appellant was the shooter beyond a reasonable doubt. Proposition I is denied.

II.
¶6 At trial, in addition to the testimony of the medical examiner, the State admitted into evidence the Report of Investigation by Medical Examiner with several attached documents. Appellant claims in Proposition II that this report was inadmissible hearsay, contained irrelevant details, and was cumulative to the testimony of the medical examiner. Additionally, Appellant specifically points to the Report of Laboratory Analysis (Toxicology Report) contained within the medical examiner's report prepared by a non-testifying witness. Appellant did not raise these objections at trial, waiving review for all but plain error. Williamson v. State, 2018 OK CR 15, ¶ 20, 422 P.3d 752, 758.
¶7 Plain error review requires the defendant to prove: (1) the existence of an actual error; (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. Even where this showing is made, this Court will correct plain error only where the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings or represented a miscarriage of justice. Id.
¶8 To be clear, we have previously held that a medical examiner's report is hearsay and does not fall within the exceptions to the hearsay rule. Martinez v. State, 2016 OK CR 3, ¶ 54, 371 P.3d 1100, 1114; Cooks v. State, 1985 OK CR 48, ¶ 28, 699 P.2d 653, 659. Furthermore, much of the report, while probative, was cumulative to the medical examiner's testimony. The admission of the report into evidence was error. However, in light of the evidence properly admitted at trial, Appellant has failed to demonstrate that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923. As a result, Appellant has failed to demonstrate plain error and Proposition II is denied.
III.
¶9 In Proposition III, Appellant claims that the admission of a Report of Laboratory Analysis prepared by a non-testifying witness violated his Sixth Amendment right to confront witnesses against him. Appellant did not object at trial, waiving review for all but plain error as set out above in Proposition II. Mahdavi v. State, 2020 OK CR 12, ¶ 33, 478 P.3d 449, 457.
¶10 Dr. Marc Harrison, the medical examiner who performed the autopsy on the victim, testified at trial. During this testimony, the Report of Investigation by Medical Examiner was offered and admitted into evidence. However, while the majority of the report was prepared by Dr. Harrison, it included the Toxicology Report prepared by Dr. Jesse Kemp with results of several blood tests for drugs performed on the victim. Dr. Kemp did not testify at trial and there was no discussion regarding his availability.
¶11 The Confrontation Clause guarantees the right of a defendant in a criminal trial to be confronted with witnesses against him. Crawford v. Washington, 541 U.S. 36, 42 (2004). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. 541 U.S. at 68. To rank as "testimonial," a statement must have a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006). Testimonial hearsay generally includes statements made during custodial interrogation, affidavits, prior testimony not subject to cross-examination by the defendant, or statements that the declarant would reasonably expect to be used to prove some fact at a later trial. Id. Statements by technical investigators and analysts generated in forensic reports fall within the category of testimonial evidence. See Bullcoming v. New Mexico, 564 U.S. 647, 661 (2011); Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 (2009) ("certificates of analysis" prepared by forensic analysts were testimonial statements, and the analysts were "witnesses" for purposes of the Sixth Amendment).
¶12 Dr. Kemp's Toxicology Report contains testimonial statements of a witness who did not appear at trial, who was not shown to be unavailable, and who Appellant had not had a prior opportunity to cross examine. As a result, they were admitted in violation of Appellant's Sixth Amendment right to confrontation. Moreover, the Supreme Court's decision in Melendez-Diaz is clearly on point and makes this error plain or obvious.
¶13 It is at this point in the plain error analysis that we consider whether "the error affected [Appellant's] substantial rights, meaning the error affected the outcome of the proceeding." Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923; see Simpson v. State, 1994 OK CR 40, ¶¶ 11, 23, 876 P.2d 690, 694-95, 698; 20 O.S.2021 § 3001.1. In determining the impact or prejudice of this constitutional violation, the State asks us to reconsider our precedent of applying Chapman[3] harmless error to unpreserved constitutional errors. We take this opportunity to do so and find that the implications of grafting the Chapman harmless error standard onto Oklahoma's plain error standard is unsupported by federal and Oklahoma jurisprudence.
¶14 The United States Supreme Court recognized in Chapman that not all trial errors which violate the United States Constitution call for automatic reversal, rather such errors could be shown by the prosecution to be harmless beyond a reasonable doubt. Chapman, 386 U.S. at 23-24. This Court postulated about the conflict between requiring an appellant to carry a heavy burden to demonstrate prejudice when they have failed to preserve the error below and the Chapman harmless error beyond a reasonable doubt burden carried by the State in Simpson, but ultimately left the issue undecided. Simpson, 1994 OK CR 40, ¶¶ 32-35, 876 P.2d at 701-02. This Court next noted the open question regarding Chapman harmless error in conjunction with unpreserved plain error analysis in Bartell, specifically noting that the defendant had objected and preserved the constitutional error at trial. Bartell v. State, 1994 OK CR 59, ¶ 10 n. 2, 881 P.2d 92, 95 n. 2. ("In Appellant Bartell's case, trial counsel objected . . . . We therefore are not presented with a situation where counsel failed to object, and whether that failure to object affects our analysis.").
¶15 This Court was finally presented squarely with the question of whether to apply Chapman harmless error to unpreserved constitutional errors in Flores v. State, 1995 OK CR 9, ¶¶ 3-12, 896 P.2d 558, 559-62. However, while the Court applied the Chapman harmless error standard after finding the trial court erred, it did so without any explanation as to why. Id. at ¶ 6, 896 P.2d at 560. Following Flores, this Court has routinely applied Chapman harmless error to unpreserved constitutional errors on direct appeal and supplanted the showing of prejudice by an appellant.
¶16 "In Chapman, [the United States Supreme Court] held that a preserved claim of constitutional error identified on direct appeal does not require reversal of a conviction if the prosecution can establish the error was harmless beyond a reasonable doubt." Brown v. Davenport, 596 U.S. 118, 124 (2022) (emphasis added). Conversely, unpreserved constitutional errors are only subject to plain error review where the appellant bears the burden of demonstrating prejudice. Compare Johnson v. United States, 520 U.S. 461, 465-70 (1997) (reviewed unpreserved error alleging failure to submit all elements to a jury for plain error) and United States v. Cotton, 535 U.S. 625, 631-34 (2002) (reviewed unpreserved error alleging Apprendi
[4] violation for plain error) with Neder v. United States, 527 U.S. 1, 8-20 (1999) (reviewed preserved error alleging failure to submit all elements to a jury using the Chapman harmless error beyond a reasonable doubt standard) and United States v. Olano, 507 U.S. 725, 732-41 (1993) (recognizing under Federal Rules of Criminal Procedure, Rule 52, that preserved constitutional errors are reviewed under the Chapman harmless error standard while unpreserved constitutional errors are reviewed for plain error).
¶17 While this Court may continue to apply the Chapman harmless error standard to unpreserved constitutional errors based on separate state law grounds, it is also true that our reliance on Chapman as a justification of the approach is unfounded. Upon renewed consideration, we find Chapman harmless error should no longer be used when reviewing unpreserved constitutional errors.
¶18 When this Court formally adopted its plain error standard in Simpson, we specifically incorporated federal standards of review as persuasive authority along with a detailed analysis of our precedent from the early days of statehood forward. This Court was clearly cautious of a standard of review that might encourage litigants not to object, but instead to lay behind the log and deprive the trial court the opportunity to notice a mistake and correct it prior to injury or prejudice occurring. Simpson, at ¶¶ 22-24, 876 P.2d at 698-99. However, this Court also sought to move away from the "old, draconian rule barring an appellant from any possible relief because his attorney failed to preserve an error . . . ." Id. at ¶ 30, 876 P.2d at 700. The resulting plain error standard requires the appellant to demonstrate 1) the existence of an actual error; 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. Hogan, at ¶ 38, 139 P.3d at 923. Even where this showing is made, this Court will correct plain error only where the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings or represented a miscarriage of justice. Id.
¶19 The impact of incorporating the Chapman harmless error standard to our plain error analysis would seem to violate the general rule in Oklahoma that errors are not presumed injurious, rather they require an appellant to demonstrate prejudice. Simpson, at ¶ 17, 876 P.2d at 697-98; see also 20 O.S. § 3001.1. Moreover, this application creates an imbalance between an appellant who claims counsel failed to object at trial to some constitutional violation and one who raises the freestanding unpreserved error for the first time on appeal. In the first situation, an appellant would be required to show Strickland[5] prejudice; however, the second would have error presumed and shift the burden to the State to show the error was harmless beyond a reasonable doubt.
¶20 While it is not necessary "to reset the plumb line previously established by our caselaw" as we did in Simpson, we find it necessary to refine this aspect in light of the above. Simpson, at ¶ 2, 876 P.2d at 692. Plain error has always been a vehicle to present an alleged error to this Court that was otherwise forfeited. "However, the fact an error may be plain and prejudicial does not automatically guarantee reversal. In other words, it gets an appellant's foot in the door; it does not guarantee a sale, which should be 'hen's-teeth rare.'" Id. at ¶ 29, 876 P.2d at 700.
¶21 As a result, Chapman harmless error beyond a reasonable doubt is no longer applicable to unpreserved constitutional errors; rather, the appellant must make a specific showing that the error affected the outcome of the trial as with any error subject to plain error analysis.
¶22 Applying this standard to the case at bar, it is clear that the introduction of the Toxicology Report did not affect the outcome of the case. It is undisputed that the victim was killed due to several gunshot wounds. Moreover, the evidence served to corroborate Appellant's argument that the victim was a drug dealer and that it was this association that served as some other suspect's motivation for the murder. Proposition III is denied.

IV.
¶23 In Proposition IV, Appellant claims that Inspector Palmer injected an evidentiary harpoon when he testified that 1) the person in the video had hair like the Appellant; and 2) that in response to defense counsel's question about when a photograph was taken, Inspector Palmer responded, "In reference to a booking photo at the Oklahoma County Jail." Appellant alleges that these statements by Inspector Palmer indicated that he had identified Appellant at the scene on the video and that Appellant had a prior arrest.
¶24 "An evidentiary harpoon occurs when an experienced police officer makes a voluntary, willfully jabbed statement injecting other crimes, which is both calculated to prejudice, and is actually prejudicial to, the rights of the defendant." Wall v. State, 2020 OK CR 9, ¶ 25, 465 P.3d 227, 234. Testimony not met with contemporaneous objection is reviewed for plain error as described in Proposition II. Id. ¶ 27, 465 P.3d at 234-35. The first statement by Inspector Palmer did not implicate Appellant in other crimes. The second statement was a fair response to defense counsel's question and was not voluntarily injected. Jones v. State, 1990 OK CR 17, ¶ 11, 789 P.2d 245, 248. There is no error, plain or otherwise, and Proposition IV is denied.
V.
¶25 Appellant claims that the photo array given to a witness was impermissibly suggestive and that it rendered the identification of Appellant unreliable. Since Appellant did not challenge the suggestiveness of the lineup below, we review for plain error as laid out in Proposition II. Hammick v. State, 2019 OK CR 21, ¶ 8, 449 P.3d 1272, 1275.
¶26 "This Court requires only that suspects in lineups possess the same general physical characteristics as the accused and that substantial compliance with physical similarity guidelines suffices to protect due process." Id. at ¶ 13, 449 P.3d at 1276. Nothing about Appellant's pretrial identification procedures demonstrates error or a violation of due process. All subjects depicted in the photographic lineup were African American males of similar age and features, pictured from the shoulders up, against a neutral tan or gray background, with hair in dreads ranging from short to long. Any differences ascertainable from the photographs do not make the lineup "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." Mahdavi, 2020 OK CR 12, ¶ 13, 478 P.3d at 454 (quoting Webb v. State, 1987 OK CR 253, ¶ 9, 746 P.2d 203, 206). Proposition V is denied.
VI.
¶27 Appellant claims in Proposition VI that trial counsel was ineffective. This Court reviews claims of ineffective assistance of counsel de novo, to determine whether counsel's constitutionally deficient performance, if any, prejudiced the defense so as to deprive the defendant of a fair trial with reliable results. Strickland, 466 U.S. at 687; Malone v. State, 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206. "The Strickland test requires an appellant to show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's deficient performance prejudiced the defense." Malone, 2013 OK CR 1, ¶ 14, 293 P.3d at 206 (citing Bland v. State, 2000 OK CR 11, ¶ 112, 4 P.3d 702, 730).
¶28 Strickland's demanding standard for deficient performance is satisfied only by proof of unprofessional errors so serious that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Browning v. State, 2006 OK CR 8, ¶ 14, 134 P.3d 816, 830. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A defendant must overcome the presumption that the representation by counsel was sound trial strategy. Id. at 689. Further, we will not find counsel ineffective for failing to raise an objection which would have been overruled. Phillips v. State, 1999 OK CR 38, ¶ 104, 989 P.2d 1017, 1044.
¶29 Appellant complains that trial counsel failed to object to the admission of evidence addressed in Propositions II through V. These claims were addressed above. In light of that analysis, Appellant cannot show on this record that, but for counsel's actions, the result of the trial would have been different. Having failed to show prejudice from his attorney's actions, Proposition VI is denied.

VII.
¶30 Appellant finally claims that, even if no individual error in his case merits relief, the cumulative effect of the errors committed requires reversal or favorable sentence modification. "The cumulative error doctrine applies when several errors occurred at the trial court level, but none alone warrants reversal." Tafolla v. State, 2019 OK CR 15, ¶ 45, 446 P.3d 1248, 1263. Although individual errors may be of insufficient gravity to warrant reversal, the combined effect of an accumulation of errors may require a new trial. Id. There are no errors, considered individually or cumulatively, that merit relief in this case. Proposition VII is denied.
DECISION
¶31 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2023), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF OKLAHOMA
COUNTY, THE HONORABLE AMY PALUMBO, DISTRICT JUDGE

APPEARANCES AT TRIAL
MICHAEL JOHNSON
1103 NORTHWEST 87TH
OKLAHOMA CITY, OK 73114
COUNSEL FOR DEFENDANT

APPEARANCES ON APPEAL
WYNDI THOMAS HOBBS
DEPUTY DIVISION CHIEF
CAPITAL POST CONVICTION DIVISION
P.O. BOX 926
NORMAN, OK 73070
COUNSEL FOR APPELLANT

RICKY LUTZ
ADAM PANTER
ASSISTANT DISTRICT ATTORNEYS
320 ROBERT S. KERR, SUITE 505
OKLAHOMA CITY, OK 73102
COUNSEL FOR STATE

JOHN M. O'CONNOR
ATTORNEY GENERAL
OF OKLAHOMA
RANDALL YOUNG
ASSISTANT ATTORNEY
GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
COUNSEL FOR APPELLEE

 
OPINION BY: MUSSEMAN, J.
ROWLAND, P.J.: Concur
HUDSON, V.P.J.: Specially Concur
LUMPKIN, J.: Specially Concur
LEWIS, J.: Concur

FOOTNOTES
[1] Count 2, Possession of a Firearm in violation of 21 O.S.Supp.2014, § 1283, was dismissed by the State prior to being submitted to the jury.
[2] Appellant will be required to serve 85% of his sentence on Counts 1 and 3 before becoming eligible for parole consideration. 21 O.S.Supp.2015, § 13.1.
[3] Chapman v. California, 386 U.S. 18 (1967).
[4] Apprendi v. New Jersey, 530 U.S. 466 (2000).
[5] Strickland v. Washington, 466 U.S. 668, 687 (1984).

HUDSON, VICE PRESIDING JUDGE, SPECIALLY CONCURRING:
¶1 I specially concur in today's decision which abolishes harmless error analysis of constitutional claims on plain error review. As the opinion shows, this Court's decision to eliminate the Chapman v. California[1] harmless error test from our plain error regime is a needed reform. Today's move represents incremental change in our approach to plain error and, quite naturally, unanswered questions remain. Our holding today does not address harmless error review of non-constitutional plain error affecting substantial rights.[2] See Simpson v. State, 1994 OK CR 40, ¶¶ 32-37, 876 P.2d 690, 701-02 (applying the harmless error standard from Kotteakos v. United States, 328 U.S. 750, 765 (1946) to non-constitutional plain error).[3] Nor does today's holding change what is required to prove that an actual or obvious error affected substantial rights, viz., a showing that the error affected the outcome of the proceeding. See Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923.
¶2 Our plain error standard is similar in some respects to the plain error standard used in federal court. See Greer v. United States, 141 S. Ct. 2090, 2096-97 (2021) (restating the federal court plain error test). One difference, however, is that the Supreme Court has more specifically defined what is required to prove that an actual or obvious error affected substantial rights, viz., a reasonable probability that, but for the error, the outcome of the proceeding would have been different. Id. at 2096. The Supreme Court has basically incorporated the prejudice prong from Strickland v. Washington, 466 U.S. 668, 694 (1984) into the third element of the plain error test as the standard to meet to show actual prejudice. See United States v. Dominguez Benitez, 542 U.S. 74, 81-83 (2004). Another difference is that federal court applies this same basic standard to constitutional and non-constitutional errors. See Greer, 141 S. Ct. at 2100 (plain error review of constitutional error); United States v. Parson, 84 F.4th 930, 940-41 (10th Cir. 2023) (plain error review of non-constitutional error); United States v. Gonzalez-Huerta, 403 F.3d 727, 733-39 (10th Cir. 2005) (en banc) (plain error review of non-constitutional error).
¶3 Similar reform of our plain error rule is worth considering in a future case. The Strickland prejudice test is familiar to all and easily applied. The Supreme Court has expressly likened it to the Kotteakos harmless error standard, Dominguez Benitez, 542 U.S. at 81-82, and its application would provide a more definitive shape to the outcome-determinative vision underlying the substantial rights portion of our plain error test. Such a change might make sense if combined with the categorical abolition of harmless error review for both constitutional and non-constitutional errors.

FOOTNOTES
[1] See Chapman v. California, 386 U.S. 18, 24 (1967).
[2] Neither party addressed this specific issue in Propositions II or III, which included unpreserved challenges based on state law grounds to the admission of the medical examiner's report and to the toxicology report.
[3] Accord Duclos v. State, 2017 OK CR 8, ¶ 16, 400 P.3d 781, 785 (holding that an unpreserved violation of the statutory two-judge rule is non-constitutional plain error that is harmless unless the error had a substantial influence on the outcome of the case or otherwise leaves the Court in grave doubt as to whether it had such an effect); Taylor v. State, 2011 OK CR 8, ¶ 54, 248 P.3d 362, 378-79 (holding that the prosecutor's mischaracterization of the 85% Rule was plain error that nonetheless was harmless because it did not have a substantial influence on the trial's outcome).

LUMPKIN, JUDGE, SPECIALLY CONCURRING:
¶1 I compliment my colleague for completing the legal journey commenced by this court's opinions in Simpson v. State, 1994 OK CR 40, ¶¶ 11, 23, 876 P.2d 690, 694-95, 698 and Bartel v. State, 1994 OK CR 59, ¶ 10 n. 2, 881 P.2d 92, 95 n. 2, when we took necessary steps to obviate the vaporous concept of "fundamental error", a concept that allowed judges to make rulings on how they might feel rather than being bound by an objective rule of law. The failure to faithfully apply the objective plain error standard in Flores v. State, 1995 OK CR 9, 896 P.2d 558, created the problem the court is now faced with correcting.[1]

¶2 Throughout legal history the rule has been if a party fails to object at trial to a perceived error, then any objection to that evidence is waived. See Huff v. Territory, 1905 OK CR 49, 85 P. 241, 243 (1905) (witness was arrested as he testified, but defense counsel lodged no objection, rendering this infringement of rights waived); Bias v. United States, 3 Ind.Terr. 27, 53 S.W. 471 (1899) (where no specific objection occurs at trial, no issue is raised on review). Thus, that issue is totally forfeited and waived from appellate review. However, the plain error doctrine contained in 20 O.S.2021, § 3001.1 and as upheld by the Supreme Court in United States v. Olano, 507 U.S. 725, 734-35 (1993), gives an appellant a back door to obtain review on appeal if he/she can meet the assigned burden of proof. That process has been set out in Oklahoma in Simpson, Bartel, and Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. The plain error doctrine clearly places the burden on a defendant appealing a criminal conviction to show that (1) an actual error, (2) which is plain and obvious, and (3) which violated his/her substantial rights has occurred in the trial of his/her case. Simpson, 1994 OK CR 40, ¶¶ 11, 23, 876 P.2d at 694-95, 698. However, in order for this Court to correct plain error, the appellant must show the error seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. Simpson, 1994 OK CR 40, ¶ 30, 876 P.2d at 701 (internal citations omitted). The question presented in this case is whether the Court must tack on the additional review required in Chapman if the alleged error was a constitutional one. The logical answer is no.
¶3 The court's opinion relies on the Supreme Court's decision in Brown v. Davenport, 596 U.S. 118 (2022), to provide its negative answer and finds our plain error analysis sufficient to answer the question of whether the waived allegation of constitutional error should be reviewed. I find a more thorough analysis of Davenport and its relation to Chapman needs to be made.
¶4 In Davenport, the issue before the Supreme Court was whether on habeas review, a petitioner must satisfy both the AEDPA standard for granting habeas relief as well as the Brecht v. Abrahamson, 507 U.S. 619 (1993) standard governing harmless error before receiving habeas relief. Id., at 122. In his state trial, petitioner was shackled. On direct appeal he argued this violated his Fourteenth Amendment rights pursuant to Deck v. Missouri, 544 U.S. 622 (2005). After the appellate court remanded for an evidentiary hearing, where the trial court found the error harmless beyond a reasonable doubt pursuant to Chapman, the Michigan Court of Appeals affirmed, agreeing the prosecution proved beyond a reasonable doubt that the shackling error did not affect the verdict. Id., at 123-24. On habeas review in the Sixth Circuit, the Court granted relief, finding petitioner met the Brecht standard and established the error had a substantial and injurious effect on the outcome of his trial. The Sixth Circuit did not require petitioner to also meet the AEDPA standard, i.e., that the state court's decision was contrary to or an unreasonable application of Supreme Court authority or was based on an unreasonable determination of the facts presented to it. Id., at 126. Ultimately, the Supreme Court ruled both standards must be met before a court may grant habeas relief and reversed the Sixth Circuit's decision. Id., at 145.
¶5 The Court, in its recitation of the procedural history of the case, stated, "[i]n Chapman, this Court held that a preserved claim of constitutional error identified on direct appeal does not require reversal of a conviction if the prosecution can establish that the error was harmless beyond a reasonable doubt." Davenport, at 124. However, as shown above, Chapman had nothing to do with the Court's resolution of the issue before it in Davenport.
¶6 As the above analysis reveals, a definitive statement has not been clearly enunciated by the Supreme Court. The trail of breadcrumbs left by the Court, however, lead only in one direction. At the end, that trail points to only one conclusion: our plain error analysis is sufficient for review of an issue forfeited by failure to object at trial.
¶7 As set out in Simpson, allowing a defendant to profit by failing to object to trial errors is inconsistent with law and equity. Defense counsel should not be allowed to "lay behind the log" by making no objection and then obtain relief on appeal, despite the fact that counsel's silence deprived the trial court of its opportunity to correct the error. Id., 1994 OK CR 40, ¶ 24, 876 P.2d at 699. Trial judges are only able to rule and correct those matters raised before them. This Court is a reviewing court and if no decision is made by the trial court there is nothing for us to review. We are not equipped to render a decision in the first instance on a cold written record. Therefore, rules must be in place to create the record for review.
¶8 As I said in the order denying rehearing in Flores, 1995 OK CR 31, ¶ 4, 899 P.2d at 1171, Lumpkin, J., dissenting:
The legislative dictate [in Section 3001.1] has not only been in effect since statehood because the Legislature does not like to see convictions reversed without a valid basis; but, it also reflects a deliberate and principled philosophy that, so long as a defendant in a criminal trial receives a fair trial, he is not entitled to reversal on an error which could not possibly have affected the outcome of his trial. Or, as the [Supreme Court] phrased it:
The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, United States v. Nobles, 422 U.S. 225, 230 [95 S. Ct. 2160, 2166, 45 L.Ed.2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error 50 (1970) ('Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it'). 
***
Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed.

Rose v. Clark
, 478 U.S. 570. 577, 578-79,106 S. Ct. 3101, 92 L.Ed.2d 460 (1986) (citing Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)).
¶9 Plain error review is an extra opportunity for an appellant to ensure the fair results of his/her trial regardless of the fact the alleged error was not presented at trial. Its procedural review and restrictions on correction of waived alleged error are sufficient to ensure the Constitutional fairness of his/her trial. A forfeited alleged error is only due one "second bite" procedure, not two. To require a Chapman analysis after completing plain error review gives an appellant more benefit than one who objected at trial and preserved his/her error on appeal. There is no legal basis to afford that second level of review and certainly no logical reason to do so.
¶10 For these reasons, I specially concur in this opinion.

FOOTNOTES
[1] I continue to adhere to the law as I set forth in Flores v. State, 1995 OK CR 9, ¶¶ 1-6, 896 P.2d at 563 (Lumpkin, J., concurring in result) and Flores v. State, 1995 OK CR 31, ¶¶ 1-23, 899 P.2d 1162, 1170-77 (order on rehearing) (Lumpkin, J., dissenting). The Court initially made the mistake in Flores of treating the violation of a state statute a constitutional error. Compounding that error, the Court then required that the Chapman v. California, 386 U.S. 18, 23-24 (1967), harmless error standard be applied to it.
 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1987 OK CR 253, 746 P.2d 203, 
WEBB v. STATE
Discussed

 
1990 OK CR 17, 789 P.2d 245, 
JONES v. STATE
Discussed

 
1994 OK CR 40, 876 P.2d 690, 
SIMPSON v. STATE
Discussed at Length

 
1994 OK CR 59, 881 P.2d 92, 
BARTELL v. STATE
Discussed at Length

 
1995 OK CR 9, 896 P.2d 558, 
FLORES v. STATE
Discussed at Length

 
1995 OK CR 31, 899 P.2d 1162, 
FLORES v. STATE
Discussed at Length

 
2004 OK CR 31, 100 P.3d 1017, 
DODD v. STATE
Discussed

 
2006 OK CR 8, 134 P.3d 816, 
BROWNING v. STATE
Discussed

 
2006 OK CR 19, 139 P.3d 907, 
HOGAN v. STATE
Discussed at Length

 
2006 OK CR 34, 142 P.3d 437, 
CODDINGTON v. STATE
Discussed

 
2011 OK CR 8, 248 P.3d 362, 
TAYLOR v. STATE
Discussed

 
2013 OK CR 1, 293 P.3d 198, 
MALONE v. STATE
Discussed at Length

 
2016 OK CR 3, 371 P.3d 1100, 
MARTINEZ v. STATE
Discussed

 
2017 OK CR 8, 400 P.3d 781, 
DUCLOS v. STATE
Discussed

 
2018 OK CR 15, 422 P.3d 752, 
WILLIAMSON v. STATE
Discussed

 
2018 OK CR 24, 424 P.3d 677, 
MITCHELL v. STATE
Discussed

 
2018 OK CR 37, 433 P.3d 1264, 
MASON v. STATE
Discussed at Length

 
2019 OK CR 15, 446 P.3d 1248, 
TAFOLLA v. STATE
Discussed

 
2019 OK CR 21, 449 P.3d 1272, 
HAMMICK v. STATE
Discussed

 
2020 OK CR 9, 465 P.3d 227, 
WALL v. STATE
Discussed at Length

 
2020 OK CR 12, 478 P.3d 449, 
MAHDAVI v. STATE
Discussed at Length

 
2000 OK CR 11, 4 P.3d 702, 71 OBJ 1304, 
Bland v. State
Discussed

 
1999 OK CR 38, 989 P.2d 1017, 
Phillips v. State
Discussed

 
1985 OK CR 48, 699 P.2d 653, 
COOKS v. STATE
Discussed

 
1985 OK CR 132, 709 P.2d 202, 
SPUEHLER v. STATE
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1905 OK 49, 85 P. 241, 15 Okla. 376, 
HUFF v. TERRITORY OF OKLAHOMA
Cited

Title 20. Courts

 
Cite
Name
Level

 
20 O.S. 3001.1, 
Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Discussed at Length

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 13.1, 
Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited

 
21 O.S. 652, 
Shooting with Intent to Kill - Assault and Battery with Deadly Weapon, etc.
Cited

 
21 O.S. 701.7, 
Murder in the First Degree
Cited

 
21 O.S. 1283, 
Convicted Felons and Delinquents
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA