STATE v. VELASQUEZ
2024 OK CR 29
Case Number: S-2023-921
Decided: 10/24/2024
THE STATE OF OKLAHOMA, Appellant v. ELMER VELASQUEZ, Appellee
Cite as: 2024 OK CR 29, __ __

 

 

O P I N I O N 

LUMPKIN, JUDGE:

¶1 Appellee Elmer Velasquez was charged in the District Court of Tulsa County, Case No. CF-2023-2078, with Unlawful Possession of a Controlled Drug with Intent to Distribute (63 O.S.2021, § 240163 O.S.2021, § 2-503.1

¶2 On October 9, 2023, the Appellee filed a Motion to Quash Bindover arguing the magistrate abused her discretion in not granting relief stemming from the illegal execution of a standard search warrant. On October 24, 2023, the State filed a response to the motion. On November 8, 2023, a hearing was held before the Honorable Michelle Keely, District Judge. After hearing argument from both the State and the Appellee, the court sustained the Appellee's motion to quash the bindover and suppressed the search and all evidence seized pursuant to the search. The State announced its intent to appeal.

¶3 The State now appears before this Court pursuant to 22 O.S.2021, § 105322 O.S.2021, § 1228

¶4 Although the pleading at issue here is entitled a Motion to Quash Bindover, the court's ruling effectively excluded the entirety of the State's proof under 22 O.S.2021, § 1053State v. Morgan, 2019 OK CR 26452 P.3d 434State v. Feeken, 2016 OK CR 6371 P.3d 1124

¶5 In appeals brought to this Court pursuant to 22 O.S.2021, § 1053State v. Burtrum, 2023 OK CR 7530 P.3d 68State v. Ballenger, 2022 OK CR 11514 P.3d 478State v. Delso, 2013 OK CR 5298 P.3d 1192 An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue. Burtrum, 2023 OK CR 7

¶6 On June 15, 2023, officers of the Tulsa Police Department arrived at 9223 East 32nd Place to execute a previously obtained search warrant for the residence. Officers knocked on the front door, announced their presence, said they were there with a search warrant, and asked the occupants to come to the door. About the same time, officers noticed a security camera above the front door. Believing their service of the search warrant had been compromised, and before anyone inside the residence came to the door, the officers entered the residence. Once inside officers encountered a man on an inflatable mattress in the living room, and he was taken into custody. A man and a woman emerged from a back bedroom, and they were detained. No one else was found in the house.

¶7 A search of the house yielded passports and IDs for the Appellee in the middle bedroom. Also found in the residence was "[p]ackaging material" commonly seen in the packaging of narcotics; a baggie containing a white powdery substance, field tested as presumptively cocaine; "working" digital scales; a second baggie containing a white powdery substance; and over $8,000.00 in cash. Also found was information regarding rent and utilities showing the Appellee paid the same.

¶8 While the officers were at the residence, the Appellee drove up in a pickup and attempted -- unsuccessfully - to drive away. As the Appellee's appearance matched the photos on the identification documents in the residence, he was taken into custody.

¶9 The Appellee was bound over for trial on charges of Unlawful Possession of a Controlled Drug with Intent to Distribute and Acquiring Proceeds from Drug Activity. At a hearing on the Appellee's Motion to Quash Bindover, the district court granted the motion finding the officers' violated 22 O.S.2021, § 1228

¶10 Now on appeal, all parties concede that based on this record, the District Court did not abuse its discretion in concluding that 22 O.S.2021, § 1228

¶11 In deciding whether to exclude the seized evidence, the judge stated that she was initially persuaded by Hudson v. Michigan, 547 U.S. 586 (2006). However, after reading Brumfield v. State, 2007 OK CR 10155 P.3d 826Brumfield, this Court was asked to determine whether the police officers' execution of a search warrant violated the Fourth Amendment's "knock and announce" requirement and 22 O.S. § 1228Id., 2007 OK CR 10Id., 2007 OK CR 10Id. Therefore, as the discussion regarding the Exclusionary Rule was not necessary to the holding in Brumfield, it is dicta and not precedential. See Brown v. State, 2018 OK CR 3422 P.3d 155dicta 'is an expression in a court's opinion which goes beyond the facts before the court and therefore is an individual view of the author and is not binding in subsequent cases'", citing Cohee v. State, 1997 OK CR 30942 P.2d 211See also Brumfield, 2007 OK CR 10dicta on proposition one concerning the "knock and announce" issue and a so-called "more expansive" interpretation of our state statutes and constitution than that available vis-à-vis the federal constitution's fourth amendment.").

¶12 Further, Brumfield is inconsistent with the latest rulings from the United States Supreme Court (see Hudson discussed below) on the application of the Exclusionary Rule. Therefore, as the discussion in Brumfield is dicta and does not accurately represent the current state of the law, the case and its predecessors

¶13 In Hudson, the United States Supreme Court was presented with the question whether the application of the Exclusionary Rule was an appropriate remedy for a violation of the knock and announce requirement. 547 U.S. at 590. The Supreme Court recognized that "[t]he common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one." 547 U.S. at 589. The Court likewise acknowledged that in Wilson v. Arkansas, 514 U.S. 927, 929 (1995), the Court had concluded that the "knock-and-announce rule," for officers executing a search warrant, is constitutionally required under the Fourth Amendment. Id. However, the Court held that a violation of this knock-and-announce rule, by officers executing a search warrant, does not require that the evidence obtained in the subsequent search be suppressed. Id. 

¶14 The Supreme Court began its analysis of the application of the Exclusionary Rule with the observation that "[s]uppression of evidence, however, has always been our last resort, not our first impulse." 547 U.S. at 591. "We have rejected '[i]ndiscriminate application' of the rule, and have held it to be applicable only 'where its remedial objectives are thought most efficaciously served,' -- that is, 'where its deterrence benefits outweigh its 'substantial social costs.'" Id. (internal citations omitted).

¶15 The Supreme Court looked at two distinct requirements for application of the Exclusionary Rule. First, it examined the requirement of causation, noting that "exclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence. . . but-for causality is only a necessary, not a sufficient, condition for suppression." 547 U.S. at 592. The Court determined that the constitutional violation of the illegal manner of entry in Hudson's case was not a but-for cause of obtaining the evidence as the officers would have executed a valid search warrant and discovered the evidence inside.

¶16 The Court went on to explain that "[u]ntil a valid warrant has issued, citizens are entitled to shield 'their persons, houses, papers, and effects,' U.S. Const., Amdt. 4, from the government's scrutiny. Exclusion of the evidence obtained by a warrantless search vindicates that entitlement." 547 U.S. at 593. However, "[t]he interests protected by the knock-and-announce requirement are quite different--and do not include the shielding of potential evidence from the government's eyes. What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant. Since the interests that were violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." 547 U.S. at 593-94.

¶17 The second requirement examined by the Hudson court for application of the Exclusionary Rule was whether "its deterrence benefits outweigh its 'substantial social costs.'" 547 U.S. at 594. The Court found the costs considerable in applying the Exclusionary Rule in Hudson's case. 547 U.S. at 595.

¶18 The costs the Court considered were "the grave adverse consequence that exclusion of relevant incriminating evidence always entails (viz., the risk of releasing dangerous criminals into society)", and "imposing that massive remedy for a knock-and-announce violation would generate a constant flood of alleged failures to observe the rule", and "[c]ourts would experience as never before the reality that '[t]he exclusionary rule frequently requires extensive litigation to determine whether particular evidence must be excluded.'" Id. 

¶19 The Court explained that "[u]nlike the warrant or Miranda requirements, compliance with which is readily determined (either there was or was not a warrant; either the Miranda warning was given, or it was not), what constituted a 'reasonable wait time' in a particular case, (or, for that matter, how many seconds the police in fact waited), . . . is difficult for the trial court to determine and even more difficult for an appellate court to review." Id. 

¶20 Another consequence identified by the Court was police officers' refraining from timely entry after knocking and announcing noting that "officers would be inclined to wait longer than the law requires--producing preventable violence against officers in some cases, and the destruction of evidence in many others." Id. 

¶21 In addition to the "substantial social costs", the Court considered "the deterrence benefits" of applying the Exclusionary Rule. The Court explained that "the value of deterrence depends upon the strength of the incentive to commit the forbidden act. Viewed from this perspective, deterrence of knock-and-announce violations is not worth a lot." 547 U.S. at 596. The Court noted that "violation of the warrant requirement sometimes produces incriminating evidence that could not otherwise be obtained. But ignoring knock-and-announce can realistically be expected to achieve absolutely nothing except the prevention of destruction of evidence and the avoidance of life-threatening resistance by occupants of the premises." Id. The Court found "[m]assive deterrence is hardly required." Id. 

¶22 The Court recognized other existing methods to deter knock and announce violations including civil rights lawsuits, "the increasing professionalism of police forces", and the "increasing use of various forms of citizen review [to] enhance police accountability." 547 U.S. at 597-599.

¶23 The Supreme Court concluded that "the social costs of applying the exclusionary rule to knock-and-announce violations are considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial . . . Resort to the massive remedy of suppressing evidence of guilt is unjustified." 547 U.S. at 599.

¶24 Applying the principles of Hudson to the current case is consistent with Oklahoma criminal jurisprudence. In Long v. State, 1985 OK CR 119706 P.2d 915DeGraff v. State, 1909 OK CR 82103 P. 538See also State v. Sittingdown, 2010 OK CR 22240 P.3d 714Horn v. State, 2009 OK CR 7204 P.3d 777Gomez v. State, 2007 OK CR 33168 P.3d 1139

"It is well established that this State may grant protections to its citizens that are more expansive than those conferred by federal law." However, we have not chosen to do so. In addition, "this Court's independent interpretation of Oklahoma constitutional provisions is not circumscribed by United States Supreme Court interpretations of similar federal provisions." . . . But "if construction of federal constitutional provisions made by the United States Supreme Court appears to rest on 'sound principles,' the decisions of this Court construing equivalent provisions of the Oklahoma Constitution should harmonize with those of the United States Supreme Court construing the federal constitution."

2009 OK CR 7See also Gore v. State, 24 Okla.Crim.App. 394, 411, 218 P. 545

¶25 The Supreme Court's decision in Hudson rests on sound principles and we are therefore persuaded it should aid in our construction of Art 2, § 30 of the Oklahoma constitution and the application of the Exclusionary Rule.

¶26 Accordingly, we find the application of the Exclusionary Rule as a remedy for a violation of Section 1228 was too extreme under the facts of this case. The officers had a valid search warrant for the residence, issued by a neutral magistrate, and such validity has not been challenged. Whether or not the officers complied with Section 1228, they would have executed that warrant and discovered illegal drugs, drug paraphernalia, and cash inside the residence.

¶27 The primary purpose of the "knock and announce rule" is to protect human life and limb, to protect property from destruction, and to protect privacy and dignity. Hudson, 547 U.S. at 594. The "knock and announce rule" does not protect a person's "interest in preventing the government from seeing or taking evidence described in a warrant." Id. So too, the interests/purpose of Section 1228 have nothing to do with the seizure of evidence pursuant to a valid search warrant.

¶28 As far as the use of the Exclusionary Rule as a legal deterrent is concerned, Oklahoma has numerous legal methods for a violation of Section 1228 including but not limited to actions under the Oklahoma Government Tort Claims Act, 51 O.S. § 15122 O.S. § 1240Sittingdown, 2010 OK CR 22Illinois v. Krull, 480 U.S. 340, 347 (1987), this Court said; "the 'prime purpose' of the exclusionary rule 'is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.' Indiscriminate application of the exclusionary rule, therefore, may well 'generat[e] disrespect for the law and administration of justice.'" Id. (internal citations omitted).

¶29 Based upon the analysis of the constitutional principles set forth in Hudson considered together with our Oklahoma jurisprudence, we find the trial court abused its discretion in applying the Exclusionary Rule to suppress/exclude all evidence in this case. The State's appeal is granted, the District Court's order granting the motion to quash the bindover is reversed and the case remanded to the District Court for further proceedings consistent with this Opinion.

DECISION

¶30 The State's appeal is GRANTED. The decision of the District Court is REVERSED and the case is REMANDED to the trial court for further proceedings consistent with this opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2024), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE MICHELLE KEELY, DISTRICT JUDGE

APPEARANCES IN DISTRICT COURT AND ON APPEAL

 
 
 
  

 STEPHEN A. KUNZWEILER
 DISTRICT ATTORNEY
 ELYSSA KOHLER
 MATT KEHOE
 ASST. DISTRICT ATTORNEYS
 TULSA COUNTY DISTRICT
 ATTORNEY'S OFFICE
 500 S. DENVER AVE., STE. 900
 TULSA, OK 74103
 COUNSEL FOR
 THE STATE/APPELLANT
 
 
  

 M.J. DENMAN
 EDWARD LUTZ
 ATTORNEYS AT LAW
 616 S. MAIN ST., STE. 204
 TULSA, OK 74119
 COUNSEL FOR THE
 DEFENSE/APPEL

 LEE
 
 
 

 

OPINION BY: LUMPKIN, J. 
ROWLAND, P.J.: Specially Concur
MUSSEMAN, V.P.J.: Concur in Results
LEWIS, J.: Concur in Results
HUDSON, J.: Concur

FOOTNOTES

22 O.S.2021 § 1228

A peace officer may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant when:
1. The officer has been refused admittance after having first given notice of his authority and purpose; or
2. Pursuant to an instruction inserted in the search warrant by the magistrate that no warning or other notice of entry is necessary because there is reasonable cause to believe that exigent circumstances exist. Exigent circumstances include:
a. such warning or other notice would pose a significant danger to human life,
b. such warning or other notice would allow the possible destruction of evidence,
c. such warning or other notice would give rise to the possibility of resistance or escape,
d. such warning or other notice would otherwise inhibit the effective investigation of the crime, or
e. such warning or other notice would be futile or a useless gesture.

Erickson v. State, 1979 OK CR 67597 P.2d 344Sears v. State, 1974 OK CR 205528 P.2d 732

 Hudson, when the police arrived to execute the warrant, they announced their presence, but waited only a short time--perhaps "three to five seconds," --before turning the knob of the unlocked front door and entering Hudson's home. Officers seized drugs and guns inside the residence. 547 U.S. at 588-89.

 

 

ROWLAND, P.J., SPECIALLY CONCURRING:

¶1 I concur in reversing the district court's order suppressing the evidence in this case, and in overruling Brumfield v. State, 2007 OK CR 10155 P.3d 82622 O.S.2021, § 1228Brumfield, rarely if ever should the exclusionary rule be employed to remedy a statutory violation unless the statute itself so provides.

¶2 The exclusionary rule is a judicially fashioned remedy to enforce the strictures of the Fourth Amendment against unreasonable searches and seizures. Davis v. United States, 564 U.S. 229, 236--37 (2011) ("The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations."). The Supreme Court has employed suppression for statutory violations only where "the excluded evidence arose directly out of statutory violations that implicated important Fourth and Fifth Amendment interests." Sanchez-Llamas v. Oregon, 548 U.S. 331, 348 (2006). "The cases in which the Supreme Court has approved a suppression remedy for statutory violations are hen's-teeth rare . . . ." United States v. Adams, 740 F.3d 40, 43 (1st Cir. 2014). See also United States v. Donovan, 429 U.S. 413, 433-34 (1977) (exclusionary rule did not apply to wiretap evidence where the violation of the wiretap statute was not a main provision of the statute); United States v. De La Cruz, 835 F.3d 1, 6 (1st Cir. 2016) (violations of state or federal statutes trigger suppression only where Fourth or Fifth Amendment rights are implicated); United States v. Santos-Portillo, 997 F.3d 159, 163 (4th Cir. 2021) (same); United States v. Ware, 161 F.3d 414, 424 (6th Cir. 1998) (same); State v. Campbell, 170 Ohio St. 3d 278, 283-84, 211 N.E.3d 1174, 1179 (2021), cert. denied, 143 S. Ct. 2666 (2023) (same).

¶3 Brumfield cites and relies upon Sears v. State, 1974 OK CR 205528 P.2d 732Erickson v. State, 1979 OK CR 67597 P.2d 344Hudson v. Michigan, 547 U.S. 586 (2006) that suppression of the evidence will not normally attend a violation of the constitutionally based knock and announce rule. Because Hudson establishes that the Fourth Amendment does not require suppression of evidence where the knock and announce rule is not followed, our statute on knock and announce would not be one of those "hen's-teeth rare" exceptions to the rule that violations of statute do not trigger suppression. When our Legislature intends to suppress evidence for violation of a certain statute, it does so unequivocally and without aid of this Court. See State v. Hodges, 2020 OK CR 2457 P.3d 1093

¶4 The overwhelming majority of state and federal courts recognize that very rarely will a violation of statute without a constitutional violation trigger the exclusionary rule. I concur fully with the majority opinion.

 

 

MUSSEMAN, V.P.J., CONCURRING IN RESULT:

¶1 I join the majority in its resolution of this case by holding the exclusionary rule inapplicable. However, I write separately to both call attention to the error in the Court's chosen standard of review and address a growing trend of district courts exceeding the scope of a motion to quash for insufficient evidence as I pointed out in State v. McKittrick, No. S-2023-563 slip op. (Okl. Cr. Jul. 3, 2024) (Musseman, V.P.J., concurring in result) (unpublished).

¶2 Concerning motions to quash for insufficient evidence, the defendant may reassert before the district court a lack of evidence in a timely motion to quash based solely on that lack of evidence, not an erroneous ruling on Oklahoma's Evidence Code or even a denied motion to suppress by the preliminary hearing judge. 22 O.S.2021, § 504.1State v. Delso, 2013 OK CR 5298 P.3d 1192Whitman v. District Court of Oklahoma County, 1967 OK CR 12423 P.2d 740

¶3 Turning to the present case, Appellee's motion before the trial court was a motion to quash for insufficient evidence in name only. Appellee's argument was that officers violated the Fourth Amendment and that the evidence should be suppressed, not that there was insufficient evidence presented at the preliminary hearing to demonstrate probable cause. To be sure, Appellee identified the error as an abuse of discretion by the special judge and requested the trial court grant his motion to quash the bind over. However, despite these trappings of a motion to quash, the substance is completely divorced from Section 504.1 and a sufficiency of evidence review. Rather, it is clearly a motion to suppress that was granted by the trial court. "[W]e review the substance of the relief requested regardless of the title affixed to the motion or pleading." State v. Gilchrist, 2017 OK CR 25422 P.3d 182Delso, 2013 OK CR 5298 P.3d 1192State v. Thomason, 2001 OK CR 2733 P.3d 930

¶4 The confusion below in the trial court is revealed in the Court's holding today in our standard of review. While the Court finds that the State is properly before us under the authority of Section 1053(5) of Title 22 in light of the suppression below, this Court applies an abuse of discretion standard appropriate when we review a trial court's granting of a motion to quash. Gilchrist, 2017 OK CR 25de novo." State v. Breznai, 2022 OK CR 17516 P.3d 686de novo, that suppression was unwarranted given the facts.

¶5 But for the erroneous standard of review, I concur fully in the analysis and result reached by both the Court and Judge Rowland's separate writing.

FOOTNOTES

Washington v. State, 2023 OK CR 22541 P.3d 852McDaniel v. Brown, 558 U.S. 120, 130-31 (2010)); see also Lockhart v. Nelson, 488 U.S. 33, 40-41 (1988).